LODGED
COPY
RECEIVED

JAN - 5 2026

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___VSB___                    DEPUTY

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **JASON ADAM JENSEN,**<br><br>Plaintiff,<br><br>v.<br><br>**PAM BONDI**, in her official capacity as<br>United States Attorney General,<br><br>Defendant. | **Case No: CV-25-00246-TUC-JGZ** |

## FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION: THE CRISIS OF LEGITIMACY, STANDING, AND SOVEREIGN IDENTITY

Plaintiff Jason Adam Jensen, appearing *pro se* and as a member of the "Institutionally Indigent," brings this action to challenge the structural deprivation of access to a neutral, adversarial forum. This action is necessitated by a measurable collapse in judicial legitimacy and a widening "justice gap" that leaves the indigent without remedy.

Public trust in the U.S. judicial system has hit a record low of 35% as of 2024 (Gallup), with 72% of Americans perceiving that the courts favor the wealthy (Judicature/Duke). This perception of class-bias is grounded in the brutal reality of the "Justice Gap": low-income Americans receive inadequate or no legal help for 86% to 92% of their civil legal problems

(Legal Services Corporation). Furthermore, modern consumer existence is governed by "take-it-or-leave-it" adhesion contracts, which comprise nearly 99% of consumer agreements, effectively weaponizing mandatory arbitration and forum-selection clauses to "delete" substantive rights before a citizen ever reaches a courthouse.

In this landscape of systemic exclusion, the historical drift from the constitutional floor of *Neitzke v. Williams*, 490 U.S. 319 (1989), to the current regime under the Prison Litigation Reform Act (PLRA) represents a final, structural blow. By authorizing *sua sponte* dismissals for "failure to state a claim" under 28 U.S.C. § 1915(e)(2)(B)(ii), Congress has created a system where judicial skepticism replaces adversarial testing for the poor—a displacement that the Executive Branch, through the Department of Justice, now defends as a neutral rule of procedure.

Plaintiff's standing is rooted in the concrete and particularized injury of being denied the fundamental procedural right to an adversarial proceeding. As an individual with autism and limited financial means, Plaintiff is disproportionately impacted by a system that uses "plausibility" screening to extinguish claims before they can reach the discovery or motion phase, effectively silencing the First Amendment Right to Petition.

Furthermore, Plaintiff clarifies that while Defendant Pam Bondi is named in her official capacity as the Attorney General of the United States, this suit is, in all legal respects, a suit against the **United States of America**. Under established law, an official-capacity suit is to be treated as a suit against the entity of which the officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Thus, the United States is the real party in interest here, and its institutional posture is what is being challenged under the Administrative Procedure Act and

the Constitution.

## I. JURISDICTION

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, and the Fifth and Fourteenth Amendments to the United States Constitution.

2. Jurisdiction is grounded in the foundational principle that where there is a right, there must be a remedy (*ubi jus, ibi remedium*). *Marbury v. Madison*, 5 U.S. 137, 163 (1803).

3. Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202 and 5 U.S.C. § 706.

## II. PARTIES

4. **Plaintiff:** Jason Adam Jensen is an individual residing in Tucson, Arizona. Plaintiff is indigent, unrepresented, and diagnosed with autism. Plaintiff is a "qualified individual with a disability" under 29 U.S.C. § 705(20). Plaintiff is not a prisoner and has never been incarcerated during the events giving rise to this action. Plaintiff occupies the status of the "Institutionally Indigent."

5. **Defendant:** Pam Bondi is the Attorney General of the United States, sued in her official capacity. As head of the Department of Justice ("DOJ"), she is responsible for the administration of federal judicial programs, the DOJ's litigation posture, and ensuring that executive agency actions—including the defense and maintenance of the "In Forma Pauperis" (IFP) framework—comply with the APA and the Constitution.

## III. VENUE

6. Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim—specifically the

agency action and inaction resulting in the structural deprivation of access to a neutral forum—occurred in this District.

## IV. FACTUAL ALLEGATIONS

7. In *Neitzke v. Williams*, 490 U.S. 319 (1989), the Supreme Court established that the Fifth and Fourteenth Amendments impose limits on IFP screening.

8. The Court in *Neitzke* held that a complaint is "frivolous" only if it lacks an "arguable basis in law or fact."

9. The Court warned that conflating frivolousness with a "failure to state a claim" would constitutionally deprive indigent litigants of an adversarial proceeding and allow courts to prejudge claims without service.

10. In 1996, Congress enacted the Prison Litigation Reform Act (PLRA), amending 28 U.S.C. § 1915 to explicitly authorize *sua sponte* dismissals for "failure to state a claim" (§ 1915(e)(2)(B)(ii)).

11. This legislative override intentionally displaced the constitutional cautions articulated in *Neitzke.*

12. The Defendant, through the DOJ, has adopted a final agency posture of defending and maintaining this post-PLRA screening regime as a neutral procedural rule.

13. This posture constitutes reviewable agency action and inaction under 5 U.S.C. §§ 551(13) and 701–706.

14. Plaintiff alleges that the Defendant acquiesces in a regime where the government "piggybacks" pre-PLRA definitions of frivolousness from *Neitzke* to justify the expanded, post-PLRA power to dismiss claims *sua sponte* for failure to state a claim.

15. This creates a doctrinally incoherent system that utilizes judicial skepticism as a

substitute for adversarial testing.

16. Selective pre-adversarial screening of indigent claims for "plausibility" creates a structural condition of partiality. *Tumey v. Ohio*, 273 U.S. 510 (1927); *In re Murchison*, 349 U.S. 133 (1955).

17. By defending a system where only one class of litigants (the indigent) is subjected to merits adjudication before service, the Defendant perpetuates a regime that fails to satisfy the appearance of justice. *Offutt v. United States*, 348 U.S. 11 (1954).

18. While the government may adopt procedural rules to manage dockets, the APA and the Constitution prohibit the use of such rules to abridge substantive rights or extinguish remedies. *Sibbach v. Wilson & Co.*, 312 U.S. 1 (1941); *Bronson v. Kinzie*, 42 U.S. 311 (1843).

19. The current application of § 1915(e)(2)(B) functions substantively to eliminate the First Amendment Right to Petition for the Institutionally Indigent.

20. Before the 20th century, Anglo-American courts did not possess a mechanism like Rule 12(b)(6).

21. At common law, defects were challenged by demurrers, pleas in abatement, or pleas in bar—all of which were party-initiated and required service.

22. The concept of a judge acting as a "gatekeeper" to screen for "plausibility" before a defendant is served is an historical anomaly.

23. When Rule 12(b)(6) was adopted in 1938, it was intended as a unified motion practice to replace the demurrer, remaining defendant-initiated and post-service.

24. For 50 years, under *Conley v. Gibson*, 355 U.S. 41 (1957), a complaint was not dismissed unless it appeared "beyond doubt that the plaintiff can prove no set of facts."

25. The aggressive use of Rule 12(b)(6) to screen claims for "plausibility" was introduced recently in *Bell Atlantic Corp. v. Twombly* (2007) and *Ashcroft v. Iqbal* (2009).

26. This modern shift allows judges to disregard factual allegations they deem "conclusory" based on "judicial experience," a 21st-century innovation that contradicts the adversarial core of the 1938 Rules.

27. By "piggybacking" modern *Twombly/Iqbal* skepticism onto the pre-service screening authorized by the PLRA, the Defendant maintains a regime where the indigent are the only class subjected to merits adjudication by a single judge without adversarial process.

28. While common law recognized precedent, it was historically persuasive; the Marshall Court (*Marbury v. Madison*; *Martin v. Hunter's Lessee*) institutionalized binding precedent as a tool for constitutional uniformity.

29. The Defendant utilizes this tradition of binding precedent to "freeze" modern procedural innovations—like the PLRA's screening requirements—as if they were ancient principles.

30. The Defendant simultaneously ignores the historical limits that *Neitzke* placed on judicial skepticism.

31. The current application of 28 U.S.C. § 1915(e)(2)(B)(ii) negates substantive review under the guise of "judicial economy."

32. By preventing service and an adversarial response, the Court creates a structural condition of partiality where the appearance of justice is sacrificed for docket management.

33. The Constitution of the United States, in all its provisions, looks to an "indestructible Union, composed of indestructible States." *Texas v. White*, 74 U.S. 700, 725 (1869).

34. The Union is perpetual and indissoluble, as established by the Articles of Confederation and the Preamble to the Constitution.

35. National uniformity in the interpretation and application of federal law is a structural necessity for the maintenance of a single constitutional system. *Martin v. Hunter's*

*Lessee*, 14 U.S. 304 (1816).

36. A litigation posture that creates a class-based "fragmentation" of procedural rights—subjecting only the indigent to pre-service merits adjudication—effectively "secedes" from the uniform requirements of the Fifth and Fourteenth Amendments.

37. The Defendant's institutional posture of defending § 1915(e) as a merits filter, rather than a narrow procedural check, strikes at the foundational integrity of the Union.

38. Rights of the citizens within the Union may be suspended but are never destroyed by institutional mismanagement or legislative overreach. *White v. Hart*, 80 U.S. 646 (1871).

39. The "perpetual" nature of the Union requires the perpetual availability of a neutral and adversarial forum for all citizens, regardless of wealth.

40. By maintaining a regime that selectively extinguishes the Right to Petition for the "Institutionally Indigent," the Defendant acts contrary to the core holding that the Union of these States is perpetual and its promises are indissoluble.

41. The Courts have adopted a common law posture that suggests procedural "reforms" and rules are purely internal matters of judicial economy.

42. Under the Rules Enabling Act, the Judiciary is granted the authority to manage its own rules, but this independence is contingent upon those rules not abridging, enlarging, or modifying substantive rights.

43. In practice, the Courts allow Congress to alter or override these rules—as seen in the 1996 PLRA amendments—while simultaneously shielding the *application* of those laws from meaningful constitutional or administrative review.

44. This creates a system where the Judiciary, while ostensibly an independent third branch, functions as an unresponsive and unaccountable "king" of the republic regarding the procedural extinction of indigent claims.

45. The Courts have effectively appointed themselves as the final, unreviewable arbiters of whose claims deserve to enter the adversarial system, based on wealth-contingent standards.

46. The effect of this posture is the promotion of a system where the State is permitted to "go to war" with its own citizens through social projects and legislative experiments without constitutional authority.

47. These "social projects," enacted by elected persons and enforced by an unaccountable Judiciary, utilize procedural masks to deny the "Institutionally Indigent" their day in court.

48. By refusing to allow review of these laws as acted upon by the Judiciary, the Defendant maintains a regime that is structural in its bias and "monarchical" in its refusal to be held accountable to the people or the Constitution.

49. Under the foundational holding of *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may sue a government officer in their official capacity to stop enforcement of an unconstitutional law; this is not a suit against the sovereign because an unconstitutional enactment is void and confers no authority to the officer.

50. The United States Attorney General, as the chief law enforcement officer of the United States, is the proper defendant when a federal statute is challenged as unconstitutional, as she is the officer charged with its enforcement, administration, and defense.

51. This principle applies equally to federal officers. *Philadelphia Co. v. Stimson*, 223 U.S. 605 (1912) confirms that federal officers may be sued to restrain unconstitutional action.

52. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949) distinguishes suits against the sovereign from suits against officers; a suit is proper against an officer when they act unconstitutionally or beyond statutory authority (*ultra vires*).

53. *Dugan v. Rank*, 372 U.S. 609 (1963) reaffirms that officer suits are proper when

constitutional violations are alleged.

54. The Supreme Court accepted the Attorney General as a proper defendant in *United States v. Windsor*, 570 U.S. 744 (2013), challenging the constitutionality of a federal statute (DOMA), even where the DOJ's role was partly supervisory.

55. Executive officials are proper defendants in direct constitutional challenges to a statute's structure. *INS v. Chadha*, 462 U.S. 919 (1983); *Heckler v. Mathews*, 465 U.S. 728 (1984).

56. Under the Administrative Procedure Act, while the President is not an "agency," cabinet officers like the Attorney General are. *Franklin v. Massachusetts*, 505 U.S. 788 (1992). The APA provides for review of agency action—including the DOJ's institutional posture—that is contrary to constitutional right.

57. Equitable actions against officers remain available to enjoin unconstitutional enforcement, even where statutes limit private rights of action. *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015).

58. Suing "The United States" directly triggers sovereign immunity; suing the officer charged with enforcement is the constitutionally proper route.

59. Federal courts routinely recognize the Attorney General as the proper defendant when DOJ defends a statute, enforces it, or maintains a specific constitutional posture; enforcing the unconstitutional § 1915 screening regime is an institutional action of the Attorney General.

60. Plaintiff seeks only prospective declaratory and injunctive relief against the operation of 28 U.S.C. § 1915(e), not money damages.

61. Because the DOJ (through the Attorney General) defends and perpetuates the challenged screening regime, and because Plaintiff seeks prospective relief against an alleged constitutional violation, Pam Bondi is the correct defendant.

## V. CLAIMS FOR RELIEF

### COUNT I: VIOLATION OF THE APA, 5 U.S.C. § 706(2)(B) (CONTRARY TO CONSTITUTIONAL RIGHT)

62. Plaintiff incorporates paragraphs 1–61.

63. The Fifth and Fourteenth Amendments require "meaningful access" to the courts and a neutral tribunal.

64. The Defendant's maintenance of a litigation posture that enables the sua sponte dismissal of non-frivolous structural claims—without confronting the historical and constitutional displacement of Neitzke—is contrary to the constitutional rights of Due Process and Equal Protection.

65. This conduct is unlawful under 5 U.S.C. § 706(2)(B).

### COUNT II: VIOLATION OF THE APA, 5 U.S.C. § 706(2)(A) (ARBITRARY AND CAPRICIOUS)

66. Plaintiff incorporates paragraphs 1–61.

67. The Defendant's defense of the § 1915(e) regime is arbitrary and capricious because it relies on internal inconsistencies: justifying screening based on speculative "abuse" while simultaneously denying indigent litigants standing for documented structural harm.

68. The failure to consider the near-zero success rate of structural indigent claims as evidence of systemic partiality constitutes an abuse of discretion under the standards of Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009).

69. This conduct is unlawful under 5 U.S.C. § 706(2)(A).

## VI. PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

a) Declare that the Defendant's agency action and institutional posture regarding 28 U.S.C. §

1915(e) are unlawful under the Administrative Procedure Act;

b) Declare that the application of § 1915(e)(2)(B)(ii) to dismiss the structural claims of non-prisoners sua sponte violates the Fifth and Fourteenth Amendments as it exceeds the constitutional limits recognized in Neitzke v. Williams;

c) Issue a Prospective Injunction requiring the Defendant to adopt a litigation and administrative posture that restores the right of the Institutionally Indigent to an adversarial forum and a neutral tribunal.

Respectfully submitted this 4th day of January, 2026.

/s/ Jason Adam Jensen

**JASON ADAM JENSEN** Plaintiff, Pro Se

## CERTIFICATE REGARDING USE OF ARTIFICIAL INTELLIGENCE

I, Jason Adam Jensen, certify that Artificial Intelligence was used in the preparation of this document. I have reviewed and verified the accuracy and appropriateness of the AI-generated content and take full responsibility for it as if it were my own work, in accordance with FRCP 11 and all applicable Local Rules. This system is designed to take evidence uploaded, statements made, and claims alleged to draft a legal document on point based on the regulatory documents for universal access to the law. This document was drafted or prepared with the assistance of Google Gemini 2.5 Flash system operating under a framework with a functional description located at https://github.com/TemperedEnterprises/DistrictOfArizonaAIRegulatory. The use of this system to draft this document is grounded in my own instructions and intent.

/s/ Jason Adam Jensen

**JASON ADAM JENSEN**