FILED ___ LODGED
___ RECEIVED ___ COPY

MAY 2 0 2026

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

**JASON ADAM JENSEN,**
*Plaintiff-Appellant,*

V.

**PAMELA BONDI,**
*Defendant-Appellee.*

Case No. CV-25-00246-TUC-JGZ

**NOTICE OF APPEAL AND EMBEDDED STATEMENT OF APPEALABILITY**

## NOTICE OF APPEAL AND EMBEDDED STATEMENT OF APPEALABILITY

Plaintiff Jason Adam Jensen, proceeding pro se and in forma pauperis, hereby gives notice

pursuant to Federal Rules of Appellate Procedure 3 and 4(a)(1)(B) that he appeals to the United

States Court of Appeals for the Ninth Circuit from the Order entered April 24, 2026 (Doc. 14),

dismissing the First Amended Complaint with prejudice and closing this action.

## I. JURISDICTION AND TIMELINESS

This Court entered final judgment on April 24, 2026. This Notice is filed within thirty (30) days of

that judgment as required by Fed. R. App. P. 4(a)(1)(A). The Ninth Circuit has jurisdiction under

28 U.S.C. § 1291 as an appeal from a final order of the district court. The order disposed of all

claims as to all parties and is immediately appealable as of right.

## II. STATEMENT OF APPEALABILITY — CONSTITUTIONAL QUESTIONS

## WARRANTING REVIEW

This appeal presents a question of constitutional dimension that no federal court has squarely

resolved: **whether Congress possessed the delegated authority to enact 28 U.S.C. § 1915(e)(2)'s mandatory pre-service screening regime, or whether fundamental access to courts by the people — including the poor — is a right retained by the people under the Tenth Amendment that Congress may not structurally eliminate through statute.**

## A. The Tenth Amendment "Or to the People" Clause as an Affirmative Reservation of Judicial Access

The Tenth Amendment provides:

> "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, **or to the people.**"

The final clause — "or to the people" — is not merely residual. It is an affirmative constitutional reservation. *See U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 848 (1995) (Thomas, J., dissenting) (recognizing the clause reserves powers to the people themselves, not merely to state governments). The right to petition a court of law for redress — to appear before a neutral magistrate unburdened by a pre-judgment of the merits — is precisely the kind of fundamental, pre-constitutional right that the people retained and did not surrender to federal legislative control.

Article III vests "the judicial Power" in courts. It does not vest in Congress the power to direct courts to perform executive screening functions *as a condition precedent* to the exercise of judicial power. The Framers understood courts as reactive, adversarial, and neutral — not as gatekeepers operating a legislative intake filter. When Congress mandates through § 1915(e)(2) that a court *shall* dismiss a complaint *sua sponte* before service, before an adversary appears, and before any adversarial process occurs, Congress has commandeered the judicial function

and reoriented it into an administrative screening mechanism — one the people never consented to and one the Constitution never authorized.

## B. No Enumerated Power Supports the Screening Mandate as Applied to Constitutional Claims

The indigent access problem is not merely a procedural one. Congress enacted § 1915 ostensibly under its authority to regulate the federal judiciary's docket and to prevent frivolous litigation. But there is no Article I enumerated power that authorizes Congress to deny a class of litigants — defined solely by poverty — the right to reach an adversarial proceeding before having their claims extinguished. The Commerce Clause does not reach it. The Necessary and Proper Clause cannot expand congressional power to *eliminate* constitutional rights under the guise of docket management. *McCulloch v. Maryland*, 17 U.S. 316 (1819), requires that the means be *legitimately* tied to an enumerated end — but no enumerated power gives Congress the authority to abrogate the judicial role of neutral arbiter.

The Tenth Amendment consequence follows directly: if the power was not delegated, it was retained. The people retained the right to stand before a court as equals, without the court being pre-programmed by statute to terminate their claims without the opposing party ever appearing.

## C. The Structural Injury — Elimination of the Neutral Arbitrator

What § 1915(e)(2) does, in operation, is this: it transforms the federal district judge from a neutral arbitrator into a surrogate defense counsel, screening the plaintiff's complaint for deficiencies that the defendant has not identified, raised, or briefed — before the defendant even knows the suit exists.

This is not a judicial act. It is an administrative act performed by a judicial officer under legislative compulsion. The Constitution does not authorize Congress to create a two-track judicial system — one in which litigants with resources receive the adversarial process the Constitution assumes, and one in which indigent litigants receive a pre-screening by the very court that is supposed to remain neutral. The right to a neutral tribunal is not a procedural nicety. It is the structural guarantee that undergirds due process, equal protection, and the First Amendment right to petition. *See Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009) ("The Due Process Clause guarantees a fair trial in a fair tribunal.").

## D. The District Court's Dismissal Illustrates the Constitutional Defect

The district court dismissed this action on the grounds that Defendant Bondi, as U.S. Attorney General, has no authority over judicial screening decisions — that § 1915(e)(2) screening is a function committed to the judiciary, not the executive. (Doc. 14 at 5–6.) The court is correct that courts perform the screening. But this observation *confirms*, rather than defeats, the constitutional injury: **Congress has directed the judiciary to perform a function — pre-service merits screening of claims by disfavored litigants — that the Constitution did not authorize Congress to assign to courts, and that the people never delegated to the federal government at all.**

The question on appeal is therefore not merely whether Bondi was a proper defendant. The question is whether the entire § 1915(e)(2) screening architecture violates the Tenth Amendment's reservation clause, the structural separation of powers, and the due process and equal protection guarantees by constructing a fundamentally different and inferior court for the institutionally indigent.

## III. ISSUES PRESENTED ON APPEAL

1. Whether the district court erred in dismissing the First Amended Complaint with prejudice without addressing the constitutional validity of 28 U.S.C. § 1915(e)(2) itself under the Tenth Amendment's reservation of rights "to the people."

2. Whether Congress possessed delegated constitutional authority to enact a mandatory pre-service judicial screening regime that eliminates adversarial process for IFP litigants, or whether that authority was never delegated and remains reserved to the people.

3. Whether the district court's identification of Bondi as an improper defendant — because screening is a judicial, not executive, function — itself demonstrates that no branch of the federal government was ever authorized to impose such a structural alteration of judicial access on the people.

4. Whether the denial of leave to amend was an abuse of discretion where the core constitutional theory — Tenth Amendment retained rights, structural neutrality, and equal protection — was not addressed on its merits.

5. Whether Plaintiff's arrest following the denial of IFP status in a collateral proceeding constitutes a cognizable downstream injury sufficient to establish standing and concrete harm within the meaning of *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).

Respectfully submitted,

Dated: May 19, 2026

/s/ Jason Adam Jensen

**Jason Adam Jensen,** *Pro Se Plaintiff-Appellant*
919 N Stone Ave #5305

Tucson, AZ 85705

jasonajensen@gmail.com

402-598-1285

## CERTIFICATE REGARDING USE OF ARTIFICIAL INTELLIGENCE

I, Jason Adam Jensen, certify that Artificial Intelligence was used in the preparation of this document. I have reviewed and verified the accuracy and appropriateness of the AI-generated content and take full responsibility for it as if it were my own work, in accordance with FRCP 11 and all applicable Local Rules. This system is designed to take evidence uploaded, statements made, and claims alleged to draft a legal document on point based on the regulatory documents for universal access to the law.

This document was drafted or prepared with the assistance of District of Arizona AI Regulated Playground v11032025 operating under a framework with a functional description located at https://github.com/TemperedEnterprises/DistrictOfArizonaAIRegulatory. The use of this system to draft this document is grounded in my own instructions and intent.

Dated: May 19, 2026

/s/ Jason Adam Jensen

**Jason Adam Jensen**, *Pro Se* \*\*\*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of May, 2026, I filed the foregoing Notice of Appeal and Embedded Statement of Appealability with the Clerk of the United States District Court for the District of Arizona, and that service will be accomplished through the Court's CM/ECF system upon all registered parties who have appeared.

/s/ Jason Adam Jensen

**Jason Adam Jensen,** *Pro Se* \*\*\*

## APPENDIX: APPELLATE STANDING & CASE STRATEGY NOTES

*(Preserved for record and preparation)*

1.  **The Standing Defense Hook (*Bond v. United States*, 564 U.S. 211 (2011)):**

    The Appellee may raise a standing defense, asserting that an individual citizen cannot bring a Tenth Amendment claim since it primarily preserves state sovereignty. *Bond* directly defeats this defense: the Supreme Court unanimously held that individuals have standing to challenge federal laws on Tenth Amendment grounds because the allocation of powers exists to protect individual liberty, not just states as abstract structures.

2.  **Turning the Court's Shield into a Sword:**

    In Doc. 14, the District Court observed that pre-service screening is committed strictly to the judiciary, not the executive branch or the Attorney General. By showing that the Attorney General was named exactly because the statute commands a structural delegation failure, you transform their "wrong-defendant" dismissal into proof of the constitutional injury: no branch of the federal government has the authority to run a two-track, pre-adversarial screening court targeting the poor.